CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/29/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:17-cr-00005 |
| v. | MEMORANDUM OPINION |
| JOHN BERNARD GOOLSBY, *Petitioner.* | JUDGE NORMAN K. MOON |

This matter is before the Court on petitioner John Goolsby's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Dkt. 88.[1] The petition will be denied because Goolsby validly waived the right to collaterally attack his judgment.

**I**

Goolsby was charged with various drug offenses in June of 2017. Dkt. 4. Following plea negotiations with the Government, Goolsby pled guilty to two counts:

1. <u>Count One</u>: Conspiracy to distribute 50 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)

2. <u>Count Three</u>: Possessing a firearm in furtherance of a drug trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)

---

[1] Goolsby filed two letters in addition to his § 2255 motion, Dkts. 87, 102, containing supplemental argument. The Court considers these arguments without comment on the propriety of supplemental filings in the § 2255 context or the necessity of responding to them.

Dkt 55. In exchange for his plea, the Government agreed to dismiss Count Two of the indictment altogether and to reduce Count One from conspiracy to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine.[2] Dkt. 4. And Goolsby agreed to waive certain rights. Including his right to collaterally attack his judgment "unless such attack is based on ineffective assistance of counsel." *Id*. at 9.

The agreement spells out Goolsby's sentencing exposure under its terms in painstaking detail. In addition to its recital of the statutory range for each count—between five- and 40-years incarceration on Count One and between five years to life on Count Three, with the requirement that any sentence on Count Three be served consecutive to any other sentence, *id*. at 1–2—the plea warns Goolsby that he is not guaranteed various Sentencing Guideline reductions. Under the subheading "Substantial Assistance", Goolsby was required to acknowledge that "the United States is under no obligation to make a motion for the reduction of my sentence" and that "**I have not been promised anything**." *Id*. at 4 (bold original). Goolsby also stipulated that "if I fail to accept responsibility for my conduct or fail to comply with any provision of this plea agreement, I should not receive credit for acceptance of responsibility." *Id*.

Before accepting Goolsby's plea, this Court verbally confirmed that Goolsby had read and understood its terms. In addition to a general confirmation, the Court assiduously inquired into Goolsby's understanding of the most important features of the agreement. Including Goolsby's intent to waive the right to collaterally attack his judgment. These exchanges are reflected in the transcript of Goolsby's Federal Rule of Criminal Procedure 11 proceedings:

> THE COURT: . . . . [D]id you read and understand the agreement before you signed it?
>
> THE DEFENDANT: Yes

---

[2] Count Two was for possession with the intent to distribute a measurable quantity of a mixture containing a detectable amount of methamphetamine. Dkt 4.

> …
>
> THE COURT: The plea agreement, as they said, calls for you to give up your right to appeal the guilty verdict and sentence in the case as well as to give up your right to attack the judgment, collaterally, at some later date
> Are you voluntarily doing so?
>
> THE DEFENDANT: Yes.

Dkt. 95 at 10. The Court also confirmed that no one had promised Goolsby anything beyond the terms spelled out in the agreement, (such as a promise from the Government that he would receive credit for substantial assistance):

> THE COURT: Other than the agreement, has anyone made any promise or assurance to you of any kind in an effort to induce you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone tried to force you to plead guilty?
>
> THE DEFENDANT: No.

*Id*. To further ensure that Goolsby was voluntarily and knowingly entering the plea, the Court questioned Goolsby regarding his satisfaction with his attorney:

> THE COURT: Have you had ample time to consult with your attorney?
>
> THE DEFENDANT: Yes
>
> …
>
> THE COURT: Are you fully satisfied with the counsel, representation and advice given you in this case by your attorney?
>
> THE DEFENDANT: Yes

*Id*. at 3–4. Goolsby also agreed that he understood he was facing a penalty of five to 40 years on Count One and a consecutive penalty of five years to life on Count Three. *Id*. at 6. After the

terms of the agreement were summarized for him, Goolsby again was asked to acknowledge that what had been said was in line with his own understanding of the agreement. *Id*. at 10.

Goolsby was initially released on bond for the interim between his plea hearing and sentencing. Dkt. 58. But his release was cut short when he violated the conditions of his release by attempting to pass off another's urine sample as his own. Dkt. 66. Goolsby then attempted to evade arrest by fleeing into the woods. Dkt. 85 at ¶ 3. While Goolsby did eventually surrender to the authorities, *id*, the Court determined at sentencing that Goolsby should not receive credit for acceptance of responsibility because of his bond violation, Dkt. 94 at 6. Nonetheless, the Court imposed a sentence that was only six months greater than the low end of the Guidelines range that would have applied had Goolsby received credit for acceptance of responsibility. *Id*. at 6. The Court imposed a sentence of 76 months for the drug offense followed by a mandatory consecutive 60-month sentence for the firearm offense. *Id*. at 7.

## II.

Goolsby states four grounds in support of his petition. First, he complains that he should have received credit for substantial assistance because he conducted controlled purchases of narcotics on behalf of law enforcement. Second, he asserts that at sentencing the Court imposed a 40-month sentence for Count One, not the 76-month sentence reflected in the judgment. Third, he claims that his plea agreement was for no more than 10 years and 10 months. And fourth, Goolsby challenges the validity of his plea agreement by stating that he did not make it knowingly and voluntarily. Specifically, he claims that he was given "16 hours to read it and understand it," and that his "lawyer was not in the office when" he got the plea. Dkt 102 at 2. Goolsby also says that his lawyer "didn't explain the plea", but instead instructed Goolsby to say that he understood it even though he did not. *Id* at 3. Goolsby also claims that his lawyer

threatened that if he did not sign the plea "they were going to lock me up the next day when we went to court" and that he "signed the plea so I would not get locked up[.]" *Id*. at 2–3.

These arguments amount to a bare contradiction of the record. Goolsby acknowledged in his written plea agreement that no one had promised him credit for substantial assistance. And in his colloquy with the Court at the Rule 11 hearing he represented that no one had promised him anything outside the terms contained in the written agreement. Nor has Goolsby offered any extraneous evidence of such an offer. Likewise, Goolsby confirmed that he understood the range of penalties he faced immediately after he was told a range that exceeded 10 years and 10 months. And the transcript of Goolsby's sentencing hearing flatly contradicts his claim that the Court sentenced him to 40-months on Count One. *See* Dkt. 94 at 7 ("[I]t is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons for a total term of . . . 136 months. And that's 76 months on Count One and 60 months on Count Three, to be served consecutively."). Finally, Goolsby told this Court that he had ample time to discuss his plea with his attorney, that he understood the agreement, and that he was satisfied with his representation.

Regardless, Goolsby validly waived these arguments by the express terms of his plea agreement. A "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). In the absence of truly extraordinary circumstances, the truth of a defendant's sworn statement that he understands his plea and is entering it voluntarily "is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id*. at 222.

Extraordinary circumstances warranting an evidentiary hearing are rare. The *Lemaster* case offered just two examples. In *United States v. White*, an evidentiary hearing was justified because the Government conceded ineffective representation. 366 F.3d 291, 300 (4th Cir. 2001). And in *Fontaine v. United States*, the petitioner offered documentary evidence that he was uncounselled and severely ill at the time of his Rule 11 colloquy. 411 U.S. 213 (1973). Nothing so extraordinary is present here.

The facts of this case are closer to those of *Lemaster* itself. In *Lemaster*, the petitioner claimed that his plea was not knowing and voluntary because his attorney failed to inform him of changes to the plea agreement during the negotiation process, failed to inform him of the potential punishment he faced under his plea agreement, and threatened that he would be denied medical care if he did not plead guilty. *Lemaster*, 302 F.3d at 222. None of these allegations were sufficient to undermine the defendant's contradictory "[s]olemn declarations in open court" that he understood the agreement, was satisfied with his representation, and was entering into the plea voluntarily. *Id*. (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

The Government has not conceded Goolsby's counsel was ineffective or that his plea was involuntary, and Goolsby points to no other extraordinary circumstances that would entitle him to an evidentiary hearing on the veracity of his sworn statements. Thus, on the basis of Goolsby's assertions during his Rule 11 colloquy, the Court finds that Goolsby's guilty plea and waiver of collateral-attack rights were knowing and voluntary.[3]

---

[3] Parts of Goolsby's motion appear to gesture at a challenge based on ineffective assistance of counsel, *see* Dkt. 102 at 2–3. But while Goolsby alleges conduct that would likely constitute deficient performance—such as the allegation that counsel coerced Goolsby with the Hobson's Choice of immediate incarceration or acquiescence in a plea he did not understand—Goolsby does not offer any reason to believe he would have rejected the plea had he had different representation. *See United States v. Murillo,* 927 F.3d 808, 816 (4th Cir. 2019) ("[W]hen deficient performance causes a defendant to accept a plea bargain he might not have

IV

Federal courts have long recognized the importance of plea bargaining to our system. *See Blackledge* 431 U.S. at 71 ("[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned."). But "[t]he advantages of plea bargains 'can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality.'" *Lemaster*, 403 F.3d at 219–20 (quoting *Blackledge*, 431 U.S. at 71). Goolsby has not offered sufficient reason under the law to release him from the commitments and representations he made in exchange for a lighter sentence than what was threatened by his indictment. His petition will be dismissed.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to Petitioner and all counsel of record.

Entered this  29th  day of December, 2021.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

otherwise, the defendant must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal."). This is not a case, like *Murillo*, where the Court is relying on "boilerplate language for a plea agreement" and ambiguous assertions to the court to brush aside strong countervailing evidence that the defendant did not understand his plea and would have rejected it had he fully appreciated its terms. There simply is no contemporaneous evidence to undermine Goolsby's assertions that he understood his plea and was satisfied both with it and his representation. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").